**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHAHAWAR MATIN SIRAJ, *et al.*, )<br><br>Petitioners, )<br><br>v. )<br><br>UNITED STATES SENTENCING )<br>COMMISSION, )<br><br>Respondent. ) | Civil Action No. 19-cv-03375 (ABJ) |

**MEMORANDUM OPINION**

Respondent the United States Sentencing Commission has filed a motion to dismiss petitioners' lawsuit against it, pursuant to Federal Rules 12(b)(1) and 12(b)(6).  The Court will grant the motion and dismiss the claims without prejudice for lack of mandamus jurisdiction, and therefore, it need not reach the Commission's additional bases for dismissal.

**BACKGROUND**

a.  Mr. Siraj

Petitioner Shahawar Matin Siraj, a federal prisoner, is serving a sentence for a May 24, 2006 conviction in the United States District Court for the Eastern District of New York.  *See United States v. Siraj*, No. 1:05-cr-00104 (E.D.N.Y. May 24, 2006) at ECF No. 166.  He was convicted of conspiring to: (1) damage or destroy by means of an explosive, any building or other real property used in interstate commerce, in violation of 18 U.S.C. §§ 844(i) and (n); (2) wreck, derail, set fire to, or disable a public transportation vehicle, in violation of 18 U.S.C. §§ 1993(a)(1) and (a)(8); (3) place a destructive device in a facility used in the operation of a public transportation vehicle without previously obtaining the permission of the public transportation provider, in

violation of 18 U.S.C. §§ 1993(a)(3) and (a)(8), and; (4) unlawfully deliver, place, discharge, or detonate an explosive device in a public transportation system with the intent to cause extensive destruction of such system, in violation of 18 U.S.C. §§ 2332f(a)(2) and (a)(1)(B). *See id.* at ECF Nos. 166 and 182. On January 4, 2007, the court denied Siraj's motions for judgment of acquittal and new trial, *see United States v. Siraj*, 468 F. Supp. 2d 408 (E.D.N.Y. 2007), and he was sentenced to three 20-year concurrent terms of imprisonment on counts one through three, to be served concurrently with a 30-year term on count four. *See Siraj*, No. 1:05-cr-00104 at ECF No. 182.

The conviction was later affirmed by the United States Court of Appeals for the Second Circuit, *see United States v. Siraj*, 533 F.3d 99 (2d Cir. 2008); *United States v. Siraj*, No. 07–0224–cr, 2008 WL 2675826, at *1 (2d Cir. July 9, 2008), and the Supreme Court denied certiorari, *see Siraj v. United States*, 555 U.S. 1200 (2009). In 2013, Siraj filed his first 28 U.S.C. § 2255 petition for habeas relief, which was also denied, *see Siraj v. United States*, 999 F. Supp. 2d 367 (E.D.N.Y. 2013), and the Second Circuit denied the certificate of appealability, *see Siraj v. United States*, Civ. No. 13-4197 (2d Cir. Mar. 17, 2014) at ECF No. 35. In 2017, the Second Circuit denied Siraj leave to file a second § 2255 petition. *See Siraj v. United States*, No. 17-854 (2d Cir. June 28, 2017) at ECF No. 37.

In 2019, Siraj filed a motion for reconsideration, which included a challenge to the denial of leave to file a successive habeas petition, *see Siraj*, No. 1:05-cr-00104 (Feb. 12, 2019) at ECF No. 200, which the sentencing court denied in part, *see id.* at ECF No. 211 (Feb. 12, 2020). In that motion, Siraj alleged that his habeas counsel was ineffective for failing to raise the issues raised in the instant litigation, that is, the sentencing court did not address the issue on the merits, finding that a challenge to habeas counsel's omissions ordinarily do not go to the integrity of the

2

habeas proceedings. *See id*. at 5 n.2.   It left the question of whether Siraj could file his motion as a third successive § 2255 habeas petition to the Second Circuit, *id*. at 4–5, and on July 2, 2020, the Circuit denied Siraj leave to do so, *see id*. at ECF No. 212.

b. Mr. Hasanoff

Sabirhan Hasanoff is also a federal prisoner, currently serving a sentence arising from his conviction in 2012, also in the Eastern District of New York. *See United States v. Hasanoff*, No. 1:10-cr-00162 (June 4, 2012) at ECF Nos. 102, 106. On June 4, 2012, he pled guilty to two-counts: (1) providing and attempting to provide material support and resources to al Qaeda, in violation of 18 U.S.C. § 2339B, and; (2) conspiring to provide material support and resources to al Qaeda, in violation of 18 U.S.C. § 371. *See id*. Hasanoff was sentenced to consecutive terms of 180 months of incarceration on count one and 36 months on count two. *See id*. at ECF No. 142.

On February 11, 2020, Hasanoff's petition for habeas relief pursuant to 28 U.S.C. § 2241 was dismissed for lack of jurisdiction, and his petitions for audita querela and coram nobis were also denied. *See United States v. Hasanoff*, Nos. 10-CR-162 (KMW) & 14-CV-7892 (KMW), 2020 WL 635576, at *3 (S.D.N.Y. Feb. 11, 2020). Hasanoff raised the same issue that is the subject of the instant litigation, but the sentencing court did not reach the issue on the merits, finding that it needed to be raised pursuant to 28 U.S.C. § 2255. *See id*. at *1–2.

c. The Instant Litigation

Petitioners, proceeding *pro se* and *in forma pauperis*, filed this matter jointly on November 6, 2019. *See generally* Pet., ECF No. 1.   After correcting certain noted pleading deficiencies, *see* Dec. 3, 2019 Ord. for Leave to Amend, petitioners filed an amended petition ("Am. Pet."), ECF No. 8, on January 6, 2020, which remains operative. Petitioners sued the United States Sentencing Commission ("the Commission"). On May 5, 2020, the Commission filed a motion to dismiss,

ECF No. 19, and memorandum in support ("Mot."), ECF No, 19-1.  Petitioners then filed an opposition ("Opp."), ECF No. 27, and the Commission filed a reply ("Reply"),[1] ECF No. 28.  This matter is now fully briefed for consideration.

Petitioners allege that, since 1994, the Commission has failed to properly implement a specific provision of the United States Sentencing Guidelines ("Sentencing Guidelines" and "Guidelines").  *See* Am. Pet. ¶¶ 1–3.  In Sentencing Reform Act of 1984, Congress created the Commission, an independent agency within the judicial branch, *see* 28 U.S.C. § 991, and gave it the authority to promulgate Sentencing Guidelines and policy statements to be used in the sentencing process, *see* 28 U.S.C. § 994(a)(1).  The Guidelines are published in the Commission's Guidelines Manual ("Manual").  Mot. at 4.  Application of the Guidelines begins with establishing the base offense level assigned to the particular offense involved.  *See* 28 U.S.C. § 994; *United States v. Berry*, 618 F.3d 13, 14 (D.C. Cir. 2010), citing Manual § 1B1.1; *see also* Am. Pet. Memorandum in Support ("Am. Pet. Mem."), ECF No. 8-3, at 4.  The level can be adjusted upwards or downwards based on specific aggravating or mitigation characteristics of the offense of the defendants.  *See Berry*, 618 F.3d at 14–15, citing 18 U.S.C. § 3553 and Manual Ch. 5, Pt.

---

[1]    Petitioners also submitted a surreply ("Surreply"), ECF No. 29, on October 9, 2020.  Even though neither the D.C. Local Rules nor the Federal Rules of Civil Procedure provide the right to file a surreply, and petitioners did not seek leave to file, the Court accepted and has considered the filing.  *See* Oct. 13, 2020 Min. Ord.  In the surreply, petitioners argue that the Commission's reply was untimely and asks that it be stricken from the record. Surreply at 1. The Court denies this request, finding that the reply was, in fact, timely; the Court set a reply deadline for September 15, 2020, *see* Jul 13, 2020 Min. Ord., and the Commission filed its reply on September 4, 2020, well prior to the expiration of that deadline. Petitioners also request that the Court issue an order requiring FCI Otisville to amend its current process of regulating and distributing legal mail. *See* Surreply at 2–3. The Court will also deny this request, as it has no relevance to the subject matter of this lawsuit, and petitioners have provided no authority by which this Court may take such action or exercise applicable jurisdiction and venue.  Furthermore, they indicate that they are in the process of exhausting their administrative remedies in this regard, *see id.* at 3, so any judicial action is likely premature.

A.  Once the total offense level has been determined, the recommended sentencing range is found by using a grid that also takes a defendant's criminal history into account.  *See id*.   Relevant to this matter is an aggravating factor, or an "upward adjustment," for felony offenses that involved or were intended to promote terrorism ("terrorism adjustment").  *See* Mot. at 4, citing Manual § 3A1.4.

In 1993, Congress directed the Commission to "amend its sentencing guidelines to provide an enhancement for any felony, whether committed within or outside of the United States, that involves or is intended to promote international terrorism, unless such involvement or intent is itself an element of the crime." Mot. at 4, quoting the Violent Crime Control & Law Enforcement Act of 1994 ("VCCLEA"), Pub. L. No. 103-322, § 120004, 108 Stat. 1796, 2022 (1994); *see* Am. Pet. ¶ 2, 10, 18.

In response, the Commission removed an existing upward adjustment provision for offenses "in furtherance of terroristic action," previously found at Manual § 5K2.15, replacing it with a new adjustment provision, published at Manual § 3A1.4 ("International Terrorism"), which dictated that, "[i]f the offense is a felony that involved, or was intended to promote, international terrorism, increase by 12 levels; but if the resulting offenses level is less than 32, increase to level 32[,]" Mot. at 4–5, quoting Manual App. C, amend. 526 (effective Nov. 1, 1995); Manual § 3A1.4 (1995); *see also* Am. Pet. ¶ 10; Am. Pet. Mem. at 1–2. "International terrorism" was defined by reference to the definition at 18 U.S.C. § 2331.  Mot. at 5, quoting Manual § 3A1.4, comment (n.1) (1995).  In addition to an "increase of 12, and a floor of 32," Manual § 3A1.4 also required a defendant's criminal history be considered, *see id.*; *see also* Am. Pet. ¶ 10; Am. Pet. Mem. at 1–2.

In 1996, Congress ordered the Commission to "amend the sentencing guidelines so that the . . . adjustment relating to international terrorism only applies to Federal crimes of terrorism, as

defined in section 2332b(g) of title 18, United States Code." Mot. at 5, quoting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, § 730, 110 Stat. 1214, 1303 (1996). The directive in the AEDPA instructed the Commission to "amend the sentencing guidelines so that the . . . adjustment relating to international terrorism only applies to Federal crimes of terrorism, as defined in section 2332b(g) of title 18, United States Code." Mot. at 5, 18, quoting the AEDPA, Pub. L. No. 104–132.

In response, the Commission amended Manual § 3A1.4, *see* Am. Pet. Mem. at 3, specifying that the terrorism adjustment now applied to a "federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g)(5), Mot. at 5, quoting Manual App. C, amend. 565 (effective Nov. 1, 1997) (re-promulgating as permanent Amendment 539, which had been adopted on an emergency basis) and Manual § 3A1.4. Section 2332b(g)(5) defines a "federal crime of terrorism" as "an offense that is (A) calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct" and, (B) is a violation of one of a set of enumerated provisions, *see* 18 U.S.C. § 2332b(g)(5).

Both petitioners were convicted of offenses that are among those enumerated at Section 2332(b)(g)(5); Siraj was convicted of an offense under 18 U.S.C. § 2332f(a)(2) (bombing of public places and facilities), *see* Am. Pet. ¶ 5(a); Mot. at 18, and Hasanoff was convicted of an offense under 18 U.S.C. § 2339B (providing material support to terrorist organizations), *see* Am. Pet. ¶ 6(a); Mot. at 18–19.

In the amended petition, Siraj and Hasanoff allege that the Commission exceeded its statutory authority by discontinuing the application of the previous terrorism adjustment, which was defined based on the 1994 directives from VCCLEA. *See* Am. Pet. ¶¶ 10–19; Am. Pet. Mem. at 2–4. They maintain that, where terrorism "involvement or intent is itself an element of the

[predicate] crime," VCCLEA, 108 Stat. 1796, 2022 (1994), the terrorism adjustment should *still* nonetheless be inapplicable to sentencing, regardless of the subsequent 1996 amendments to the definition as directed by the AEDPA. *See* Am. Pet. ¶¶ 1–3, 10, 18–19; Am. Pet. Mem. at 3–4. Because the petitioners were sentenced pursuant to the most recent amendment to the Guidelines, Siraj contends that he is "serving more than 400% of what his [sentencing] guideline would have been without" imposition of the upward adjustment, Am. Pet. ¶ 5(b), and Hasanoff states that, without the upward adjustment, he would have been sentenced to a lesser guideline range of 57 to 71 months, *id.* ¶ 6(b).

Petitioners demand injunctive relief pursuant to federal mandamus, *see* 28 U.S.C. 1361, and request that Section 3A1.4 be amended and reverted to solely include the version of the terrorism adjustment defined by the VCCLEA. *See id.* ¶¶ 3, 12, 15, 17(a), 20–1; Am. Pet. Mem. at 1–2. They demand that this amendment then be applied "retroactively" to all sentences calculated pursuant the terrorism adjustment as defined by AEDPA amendments, at least where involvement or intent were elements of a defendants' offenses of conviction. *See* Am. Pet. ¶¶ 3, 10, 12, 15–17, 20–21. They state that, thereafter, all affected defendants, themselves included, can seek a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Manual § 1B1. *See id.* ¶¶ 3, 7, 11, 13, 16–17.

## LEGAL STANDARD

a. <u>Fed. R. Civ. P. 12(b)(1)</u>

Under Rule 12(b)(1), a petitioner bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F. 3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Further, a court is required to dismiss an action "at any time" if it determines that the subject matter jurisdiction is wanting.  *See* Fed. R. Civ. P. 12(h)(3).

When reviewing a challenge pursuant to Rule 12(b)(1), a court may consider documents outside the pleadings to assure itself that it has jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (holding same); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.)."  By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court.  *Haase*, 835 F.2d at 905.

b.  Federal Mandamus

Under the Mandamus Act, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction   under   "the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary

duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002), quoting *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980) (quotations omitted).

A court may provide relief pursuant to mandamus only where (1) a petitioner has a clear right to relief; (2) a petitioner has a clear duty to act, and; (3) there is no other adequate remedy available to petitioner. *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quotations omitted). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). A determination of whether mandamus jurisdiction exists under Section 1361 therefore "merges with the merits." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). Further, "[e]ven when the legal requirements for mandamus jurisdiction have been satisfied . . . a court may grant relief only when it finds compelling equitable grounds." *In re Medicare Reimbursement Litig*., 414 F.3d 7, 10 (D.C. Cir. 2005) (internal quotation and alteration omitted).

## ANALYSIS

At bottom, this case presents a challenge to the manner in which petitioners' sentences were calculated: the Commission has operated under the understanding that the AEDPA amendment superseded the prior VCCLEA definition of a crime of terrorism, Mot. at 18, *id.* n.11; Reply at 6–8, and petitioners maintain that they should have been sentenced under the older Guidelines, Am. Pet. ¶ 10; Am. Pet. Mem. at 3; Opp. at 1–2, 4–6.

A prisoner in federal custody may pursue challenges to the legality of his sentence through 28 U.S.C. § 2255, which states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the

> sentence was imposed in violations of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Thus, the Court need not, and cannot, reach the merits of this matter because petitioners have failed to satisfy the elements which would allow for the exercise of mandamus jurisdiction and any claims for mandamus relief here are prohibited because petitioners' sole federal remedy is a writ of habeas corpus   *See In re Dudley*, No. 00-5441, 2001 WL 238168, at *1 (D.C. Cir. Feb. 13, 2001) (per curiam) (affirming dismissal of mandamus action where petitioner was in essence challenging his sentence, which must be pursued through habeas corpus), citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988).

Petitioners seek to avoid this outcome by explaining that this suit is not meant to be "an attack on any individual judgments, or convictions, or sentences [,] but is only a suit to require the Commission to come into compliance[2] with the statutorily ordered directive by Congress." Am. Pet. ¶ 4.  However, they frequently refer to themselves as "affected parties," and indicate their intent to pursue sentence reductions as a result of the relief sought.  *See id.* ¶¶ 3, 7, 11, 13, 16–17; *see also* Manual § 1B1.10; 18 U.S.C. § 3582(c)(2); 28 U.S.C. §§ 994(o), 994(p), 994(u) (the Commission's statutory authority to specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for an offense may be reduced).  But not

---

[2]     Petitioners do not explicitly cite the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, but the Court notes that the APA generally waives sovereign immunity "to the extent that declaratory judgment or other equitable relief may be available" to a person harmed by agency action.  *Ballard v. Holinka*, 601 F. Supp. 2d 110, 121 (D.D.C. 2009), citing 5 U.S.C. § 702.  Here, though, it is of no consequence. With the exception of the "notice and comment" requirements of the APA, "the Commission's rulemaking [is] not subject to any other provision of the APA, including those for judicial review[,]" *U.S. v. Lopez*, 938 F.2d 1293, 1297 (D.C. Cir. 1991), because the Commission is "part of the judicial branch[,]" *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994).

withstanding petitioners' strategy of challenging the Commission instead of the sentencing court, petitioners are fundamentally attacking the legality of their sentences.

The law of is clear in this Circuit that petitioners "may not circumvent the procedures for seeking habeas corpus relief by bringing [a] mandamus petition." *In re Dudley*, 2001 WL 238168, at *1, citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 808–10 (D.C. Cir. 1988) (en banc) (holding that a federal prisoner, even incidentally challenging term of custody by seeking mandamus relief, must proceed by habeas); *see also Taylor v. United States Board of Parole*, 194 F .2d 882, 883 (D.C. Cir. 1952) (attack on the constitutionality of the statute under which defendant was convicted and sentenced is properly pursued by use of 28 U.S.C. § 2255); *Fortson v. U.S. Sentencing Comm'n*, 109 Fed. Appx. 437, at *1 (D.C. Cir. 2004) (per curiam) (affirming dismissal of mandamus petition against the Commission because it nonetheless represented a collateral attack on petitioner's sentence that must be filed with the sentencing court pursuant to 28 U.S.C. § 2255).

Because this action attacks, albeit circuitously, the legitimacy of petitioners' sentences, and would result in reduction in their terms, petitioners must proceed in their sentencing courts pursuant to 28 U.S.C.A. § 2255.  *See Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) (A "prisoner must bring his claim in habeas . . .  if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.' "), quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *see also Preiser*, 411 U.S. at 500 ("As a matter of Congressional intent, prisoners mounting a challenge to the lawfulness of their custody are to proceed by means of habeas.").

In their opposition, petitioners briefly address the three threshold jurisdictional requirements for mandamus, and broadly argue that they are entitled to such relief.  *See* Opp. at 3–

5.  But petitioners fail to cite any legal authority to support this contention, and they focus instead on their existing factual allegations and claiming, without foundation, that they cannot raise their claims pursuant to 28 U.S.C. § 2255.  *See id*.

Section 2255 is a broad remedy and, despite petitioners' contentions, *see* Opp. at 3–4, their habeas petitions *may include* challenges to the Commission's interpretation and implementation of its Sentencing Guidelines as it relates to the execution of their respective sentences.  *See Chatman-Bey*, 864 F.2d at 807 ("the Supreme Court has steadily eliminated many of the traditional limitations on the availability of habeas corpus.").  Federal courts have the power and discretion under federal habeas to fashion a wide-range of appropriate relief.  *See Peyton v. Rowe*, 391 U.S. 54, 66–67 (1968).  For this reason, a prisoner may be excused from pursuing relief under 28 U.S.C. § 2255 only when it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention[,]" *id*.

Here, petitioners do not argue that habeas would be an ineffective way to proceed.  While their prior habeas petitions did not result in the relief sought, "[a] petitioner may not complain that the [habeas] remedies provided him by are inadequate merely because he was unsuccessful when he invoked them."  *Wilson v. Office of the Chairperson*, 892 F. Supp. 277, 280 (D.D.C. 1995); *Garris v. Lindsay*, 794 F.2d 722, 727 n.39 (D.C. Cir. 1986) (same), *cert. denied*, 479 U.S. 993 (1986).

Additionally, if petitioners failed to raise these issues through habeas, or the sentencing court did not directly reach the issues, that would not render those habeas proceedings ineffective. *See Chatman–Bey*, 864 F.2d at 806.  Here, if the Court were to opine on the merits, it would be offering commentary and causing disruption to the existing dispositions issued by the Eastern District of New York and the Second Circuit, in excess of its given authority.  *See id*.

Because the relief sought in the mandamus[3] petition "falls comfortably within the broad confines of habeas corpus, mandamus would be inappropriate in this case even if habeas were simply an available, rather than exclusive, remedy." *Chatman-Bey*, 864 F.2d at 806 n.2.

## CONCLUSION

For the reasons expressed, this Court lacks mandamus jurisdiction.  To seek the relief sought, Petitioners must either file a § 2255 petition with the Eastern District of New York or seek leave from the Second Circuit to file a successive § 2255 petition.  Accordingly, the Court grants the United States Sentencing Commission's Motion to Dismiss the Petition and dismisses this matter without prejudice.  A separate Order will issue.

AMY BERMAN JACKSON
United States District Judge

Date:   March 18, 2021

---

3       Petitioners indicate, only briefly in passing, an intention to seek "declaratory relief," *see* Am. Pet. at title, introduction, but then make no mention of the Declaratory Judgment Act, 28 U.S.C. § 2201, or its requirements, and focus their arguments entirely on federal mandamus, *see* Am. Pet. at title, introduction, ¶¶ 9(b), 21(A); Opp. at 2–5. The Court nonetheless notes the inapplicability of the Declaratory Judgment Act to these claims, as it is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011), quoting *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (other citations and internal quotation marks omitted). Here, petitioners have not identified an independent source of jurisdiction, thus rendering the Declaratory Judgment Act inapplicable.